# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:21-cv-00018-MR
### CRIMINAL CASE NO. 1:17-cr-00046-MR-WCM-5

| | |
|---|---|
| **RICHARD ARLEE CHAMPION,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **Respondent.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 9]. Also pending are the Respondent's Motion to Dismiss [Doc. 13], and the Petitioner's Motion for Extension of Time [Doc. 17].

## I. BACKGROUND

On August 1, 2017, the Petitioner Richard Arlee Champion was charged in a Superseding Bill of Indictment along with five co-Defendants in a methamphetamine trafficking conspiracy. [Crim. Case No. 1:17-cr-00046-MR-WCM-5 ("CR"), Doc. 39].[1] The Petitioner was charged with one count of

_____

[1] The original Indictment, which did not name the Petitioner as a defendant, was filed on April 4, 2017. [CR Doc. 1].

conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count One), and one count of possession with intent to distribute at least 50 grams of actual methamphetamine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Five). [Id.]. The Government filed an Information indicating that it intended to rely on a prior felony drug conviction to seek an enhanced sentence pursuant to 21 U.S.C. § 851. [CR Doc. 91].

The Petitioner's counsel filed a Motion to Dismiss the Superseding Indictment, arguing that the Petitioner was not timely brought before a judicial officer pursuant to Rule 5 of the Federal Rules of Criminal Procedure, which prejudiced his speedy trial rights pursuant to 18 U.S.C. § 3161. [CR Doc. 140]. The Court denied the Motion at a hearing on January 3, 2018. [See Doc. 15-1 at 52-53]. At the same hearing, the Government proffered that it had made a plea offer to the Petitioner, which called for his guilty plea to Count One in exchange for the dismissal of Count Five and the § 851 enhancement, and that the Petitioner had rejected that offer. [Doc. 15-1 at 55-56; see Doc. 15-6]. The plea would have reduced the Petitioner's sentencing exposure from twenty years to life imprisonment, to ten years to life imprisonment. [Id.]. The proposed plea offer included the parties' joint

recommendation that the amount of actual methamphetamine known to or reasonably foreseeable by the Petitioner was 248.9 grams, as well as the "standard reduction levels" for pleading guilty. [Doc. 15-1 at 57-58; Doc. 15-6]. Defense counsel stated that he accurately communicated the offer to the Petitioner, presented it to him in person, and discussed with the Petitioner's the offer's consequences, including its sentencing implications. The Petitioner confirmed in open court that the foregoing was accurate and that he had rejected the plea offer. [Doc. 15-1 at 58-60].

At trial, the Government presented evidence that in the summer of 2016, Drug Enforcement Agency ("DEA") agents had begun investigating the distribution of crystal methamphetamine by the Petitioner's co-defendant, Marissa Burt. [Id. at 85]. Agents conducted controlled purchases of methamphetamine from Burt and her roommate, co-Defendant Jillian Swimmer, and obtained a warrant to place a GPS tracking device on the vehicle of Burt's suspected driver, co-Defendant Jordan Oocumma. [Id. at 87-89, 92-93, 97, 101]. The investigation led Special Agent Billy Joe Stites to suspect that Burt and others were engaged in methamphetamine trafficking with a source of supply in Atlanta, Georgia. [Id. at 112-13, 118, 123-24, 163]. North Carolina Highway Patrol intercepted Oocumma's vehicle upon its return from Atlanta to North Carolina on September 13,

2016. [Id. at 163-64]. During the traffic stop, co-Defendant John Wise intentionally crashed his vehicle nearby in an unsuccessful attempt to divert the trooper's attention and permit Burt to escape. [Id. at 167-68]. A search of Oocumma's vehicle revealed 248.9 grams of actual methamphetamine, marijuana, a purse with a firearm and ammunition inside, handwritten drug ledgers, scales, syringes, and Burt's cell phone. [Id. at 175-76; Doc. 15-2 at 17-18, 65-65].

Burt, Oocumma, Swimmer, and Wise all pleaded guilty and testified at the Petitioner's trial. [Doc. 15-2 at 240-41; Doc. 15-3 at 232-33; Doc, 15-4 at 12-13, 42-43]. Burt, Swimmer, and Oocumma testified that Burt and others traveled to Atlanta every few days during the summer of 2016 to purchase distribution quantities of methamphetamine from the Petitioner, whom they all identified at trial as "Champ." [Doc. 15-1 at 306; Doc. 15-2 at 254-57, 295; Doc. 15-3 at 258-61, 354; Doc. 15-4 at 56- 57, 69-70].

At trial, the Government introduced Burt's cell phone records showing that Burt had repeatedly called a number belonging to an individual she identified as "Champ," which demonstrated that Burt and Champ had coordinated Burt's trips to Atlanta and meetings once she arrived there. [See Doc. 15-2 at 42-27]. After her arrest, Burt placed recorded phone calls to "Champ" that were played for the jury. [Doc. 15-1 at 200; Doc. 15-3 at 26].

Burt identified the Petitioner's voice in the recordings. [Doc. 15-3 at 20-22]. During the second recorded call, the Petitioner became suspicious of Burt and told her to "tell narcotics and the … feds [that] Champ says suck his mother fucking dick and when they come for me … they better be ready to shoot it out." [Doc. 15-1 at 221; Doc. 15-4 at 266-67].

On cross-examination, the Petitioner's counsel addressed inconsistencies in the sequence of events and details of the Atlanta trips, the co-Defendants' drug abuse and criminal histories, and the co-Defendants' potential to benefit from their plea agreements. [Doc. 15-1 at 234-35; Doc. 15-3 at 31-32, 148; Doc. 15-4 at 141]. Counsel also addressed the inadequacy of law enforcement's investigation, including the failure to obtain surveillance video footage from the location of several of the drug deals; investigate vehicle registration information for Champ's vehicles; or obtain investigative support from the Atlanta DEA office. [Doc. 15-1 at 277, 290-95, 314-15; Doc. 15-2 at 107-10; Doc. 15-4 at 197-98].

Defense counsel argued in closing that Burt, Oocumma, Swimmer, and Wise were biased and provided inconsistent testimony, that there was no physical evidence connecting Petitioner to the offense, that law enforcement failed to adequately investigate the case, and that "Champ" is a common nickname. [Doc. 15-4 at 276-99].

5

The jury found the Petitioner guilty of both counts. [CR Doc. 161].

The Presentence Investigation Report (PSR) scored the base offense level as 36 because the Petitioner was responsible for more than 2.04 kilograms of actual methamphetamine. [CR Doc. 178 at ¶¶ 11, 17]. No specific offense characteristics or Chapter Four enhancements were added. [Id. at ¶¶ 18-23]. The Petitioner's criminal history scored multiple prior convictions including: three points for a 2002 Georgia conviction for felony statutory rape and three points for a 2010 Georgia conviction for possession of marijuana greater than one ounce. [Id. at ¶¶ 28, 33, 34, 36]. Two points were added because the Petitioner committed the instant offense while he was on parole. [Id. at ¶ 39]. This resulted in 14 criminal history points and a criminal history category of VI. [Id. at ¶ 40]. The resulting advisory guideline range was 324 to 405 months' imprisonment. [Id. at ¶ 68]. The Petitioner submitted a statement to the Probation Officer asserting that the investigation was inadequate, that the 16-month delay in bringing him to trial[2] prevented him from formulating an effective defense, that the co-

_____

[2] The Petitioner apparently refers to the sixteen months between the offense conduct and the Petitioner's trial. There were only five months between the Petitioner's indictment and trial, with two of those months resulting from a continuance of the trial date requested by the Petitioner and his co-defendants. [See CR Docs. 106, 109; CR Text-Only Order entered Nov. 3, 2017].

6

conspirators lied, and that evidence that was not introduced at trial would prove his innocence. [Id. at ¶ 49].

Defense counsel filed objections to the PSR, arguing that the August 2002 statutory rape conviction should not be scored because it would now be a misdemeanor, that the criminal history category should be V, and that the guideline range should be 292 to 365 months' imprisonment. [CR Doc. 177].

The sentencing hearing was held on Thursday April 26, 2018. [Doc. 15-4]. At the hearing, the Petitioner stated that he had received the PSR the previous Friday and that he was in the process of discussing it with counsel. [Id. at 352-53]. The Court recessed the hearing so that the Petitioner could continue his discussion with counsel. [Id. at 353]. Following the recess, the Petitioner confirmed that he had had an opportunity to review the PSR with counsel and understood its contents. [Id. at 354].

At the hearing, defense counsel made an oral argument in support of his written objection to the criminal history points assigned to the Petitioner's 2002 statutory rape conviction. The Court overruled this objection on the ground that the Petitioner's probation revocations resulted in an aggregate sentence of over 13 months' incarceration for the statutory rape. [Id. at 356-57]. The Court therefore concluded that this conviction was correctly

assigned three points pursuant to U.S.S.G. §§ 4A1.1 and 4A1.2. [Id.]. Counsel also argued that the base offense level should be 32 rather than 36 because the evidence at trial demonstrated that the relevant amount was 252 grams rather than 2.04 kilograms of methamphetamine. [Id. at 358]. The Court entertained this objection even though it was untimely, and sustained it in part because the preponderance of the evidence supported a finding of only 1.1 kilograms of methamphetamine. [Id.]. This reduced the offense level from 36 to 34, and reduced the guideline imprisonment range to between 262 and 327 months. [Id. at 371-72]. The Government requested a guideline sentence. [Id. at 372]. The Petitioner asked for a downward variance from the Guidelines range because the PSR did not "accurately depict[] who [he is] or [his] character," and in light of the nature of his prior convictions and his accomplishments since his 2012 release from prison. [Id. at 373-74].

The Court considered the 18 U.S.C. § 3553(a) factors and sentenced the Petitioner at the bottom of the advisory guideline range to 262 months' imprisonment for each count, to be served concurrently, followed by 10 years of supervised release. [Id. at 374-75]. The Judgment was entered on April 30, 2018. [CR Doc. 180].

8

On direct appeal, Petitioner argued that: (1) the Superseding Indictment should have been dismissed because the delayed first appearance before a magistrate judge violated his rights; (2) the prosecutor engaged in misconduct by making improper closing arguments; (3) testimony about the impact of drugs on Burt's life should not have been admitted; and (4) the Court improperly scored three criminal history points for the statutory rape conviction, which is now a misdemeanor under Georgia law. The Fourth Circuit rejected the Petitioner's arguments in all respects and affirmed his conviction and sentence. United States v. Champion, 777 F. App'x 66 (4th Cir. 2019). The Fourth Circuit denied rehearing and rehearing *en banc* on August 13, 2019. [4th Cir. Case No. 18-4274, Doc. 64]. On November 6, 2019, the U.S. Supreme Court granted the Petitioner an extension of time until January 10, 2020 to file a petition for writ of certiorari; however, no such petition was ever filed. [4th Cir. Case No. 18-4274, Doc. 66]. As such, the Petitioner's judgment became final on the date the petition had been due.

On July 15, 2019, the Petitioner filed a Motion to Compel, asking the Court to compel trial counsel to surrender the case file to him so that he could file a § 2255 petition. [CR Doc. 202]. The Court denied the Motion and denied rehearing. [CR Docs. 203, 206]. On February 19, 2020, the Fourth

Circuit vacated the orders and remanded with instructions to grant the Petitioner's Motion to Compel. <u>United States v. Champion</u>, 794 F. App'x 289 (4th Cir. 2020). The Motion was granted on March 23, 2020. [CR Doc. 212].

In a Letter dated March 23, 2020, Petitioner asked the Court to toll the time to file a § 2255 petition through May 22, 2020, in light of the COVID-19 pandemic. [CR Doc. 213]. The Court denied the request as moot because the one-year statute of limitations had not yet expired. [CR Doc. 214].

the Petitioner filed a § 2255 Motion to Vacate in the instant case on January 7, 2021.[3] [Doc. 1]. As grounds for relief, the Motion to Vacate states as follows *verbatim*:

> (1)   Ineffective Assistance of Counsel
>
>> (A)   Whether counsel performed deficiently for failing to investigate
>> (B)   Whether counsel performed deficiently at the plea stage
>> (C)   Whether counsel performed deficiently in failing to present voice exemplar
>> (D)   Whether counsel performed deficiently in preparing the only conceivable defense
>> (E)   Whether counsel performed deficiently failing to utilize impeachment evidence or pursue an impeaching cross examination
>> (F)   Whether counsel performed deficiently in failing to object

---

[3] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

(G)   Whether counsel performed deficiently in failing to move for a mistrial

(H)   Whether counsel performed deficiently in requesting jury instructions

(I)   Whether the movant was constructively denied counsel at sentencing

(J)   Whether the movant was constructively denied counsel on appeal

(2)   Abuse of Discretion

(A)   Whether the Court abused discretion admitting emails

(B)   Whether the Court abused its discretion in admitting hotel receipts

(C)   Whether the Court abused its discretion admitting hearsay testimony

(D)   Whether the Court abused its discretion denying the Movant['s] Rule 29 Motion.

(3)   Due Process Violation

(A)   Whether Due Process was violated due to the Government's pre indictment delay

(B)   Whether Due Process was violated due to the cumulative effect of pervasive and egregious conduct of the prosecutor

(C)   Whether Due Process was violated due to the cumulative effect of multiple trial errors

(D)   Whether Due Process was violated at sentencing due to the court relying on factually inaccurate information

(4)   Burden of Proof

(A)   Whether the Government proved each and every element beyond a reasonable doubt

[Doc. 1 at 4-8]. The Motion to Vacate refers to a "Memorandum of Points and Authorities" to be filed at a later date. [See Doc. 1 at 5, 7; Doc. 1-1].

On January 19, 2021, the Court entered an Order finding the Motion to Vacate insufficient and granting the Petitioner thirty days to amend, "subject to all timeliness and procedural requirements." [Doc. 5 at 2]. The Court specifically instructed the Petitioner to address the § 2255 statute of limitations and, if applicable, the doctrine of equitable tolling. [Id. at 2-3].

Also on January 19, 2021, a Memorandum in support of the Motion to Vacate, dated January 12, 2021, was docketed. [Doc. 6].

The Petitioner filed the instant Amended Motion to Vacate on February 15, 2021. [Doc. 9]. He raises claims of ineffective assistance of trial and appellate counsel, as well as substantive trial errors, which he terms "abuse of discretion" and "due process violation[s]." [Id. at 28, 34].

The Government filed a Motion to Dismiss on May 18, 2021, arguing that this action is untimely; the claims of trial error are procedurally barred; the claims raised on direct appeal are barred; and all of the claims are meritless. [Doc. 13]. The Court informed Petitioner of his right to respond to the Motion to Dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and granted him 30 days to do so. [Doc. 16]. On June 23, 2021, the Petitioner filed a Motion for Extension of Time to Respond to the

Government's Motion to Dismiss [Doc. 17]. Six days later, on June 29, 2021, the Petitioner filed his Response to the Motion to Dismiss. [Doc. 18].[4] The Government has not filed a reply. This matter is now ripe for disposition.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings …" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

---

[4] Both of these documents were docketed on July 2, 2021.

## III.    DISCUSSION[5]

### A.    Statute of Limitations

Motions to vacate filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations, which runs from the latest of:

> (1)    the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The Petitioner's conviction became final for purposes of § 2255(f)(1) on January 10, 2020, when the time to file a petition for writ of certiorari expired.  See Clay v. United States, 537 U.S. 522, 524-25 (2003).  The

---

[5] The lengthy allegations have been liberally construed, reorganized, and renumbered. Any argument or claim not specifically addressed in this Order has been considered and rejected.

14

Petitioner therefore had one year from January 10, 2020 to file a motion to vacate. [See CR Doc. 214].

The Petitioner filed a Motion to Vacate within that one-year period. [Doc. 5]. However, that Motion contains only headings and failed to specify any facts supporting each ground for relief. See 28 U.S.C. foll. § 2255, Rule 2(b) (stating that a § 2255 petition "must: (1) specify all the grounds for relief available to the nonmoving party; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury"). The Memorandum and the Amended Motion to Vacate were both filed outside the one-year statute of limitations. [Docs. 6, 9]. The Petitioner argues that his § 2255 claims relate back to the original Motion to Vacate because the Court granted the Petitioner leave to amend. [Doc. 9 at 44-45].

An otherwise untimely claim relates back to the original timely-filed pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The "original pleading" to which Rule 15 refers is the motion to vacate in a § 2255 proceeding. See Mayle v. Felix, 545 U.S. 644, 655 (2005) (discussing a habeas corpus petition pursuant to 28 U.S.C. § 2254). For the Court to find that an otherwise

untimely claim relates back to the original timely filed petition, the amended claim must arise from a "common core of operative facts," and may not be dependent on events that are separate both in time and in the substance of the facts upon which the original claims depended. Mayle, 545 U.S. at 664. An amended claim does not relate back to a bare bones placeholder § 2255 motion that is filed within the limitations period. See United States v. Diallo, 581 F. App'x 226 (4th Cir. 2014); Freeman v. United States, No. 3:10-cv-466, 2010 WL 3155982, at *1 (E.D. Va. Aug. 6, 2010) ("a skeletal Section 2255 motion is inconsistent with the fact pleading requirements of Section 2255 practice and does not stop the statute of limitations applicable to 28 U.S.C. § 2255 motions.").

The Petitioner's skeletal Motion to Vacate includes only headings. Thus, it fails to "specify all the grounds for relief…" and "state the facts supporting each ground" as required by Rule 2(b). [See Doc. 5]. The Petitioner did not provide the Court with *any* facts in support of his claims until after the statute of limitations expired. The strict one-year limitations period would be rendered illusory if a petitioner could circumvent it at will by filing a timely skeletal petition, asserting only general and conclusory claims, then avail himself of relation back principles to fill in those claims at his leisure after the one-year limitations period expires. See United States v.

16

Marshall, No. 1:13CR51-LG-RHW-1, 2018 WL 9669918, at *2 (S.D. Miss. Aug. 20, 2018) (denying a "skeletal" § 2255 petition asserting ineffective assistance of counsel, and finding that such cannot serve as a placeholder to satisfy the statute of limitations); United States v. Woods, No. 11-40046-01-JWL, 2016 WL 3743197, at *2 (D. Kan. July 13, 2016) (denying the § 2255 petition and denying petitioner's request for an extension of time to file a supporting memorandum "because [the § 2255] petition is wholly conclusory [and therefore] … there is no amendment that could 'relate back' to any specific claims raised.").  Accordingly, the Amended Motion to Vacate is untimely, does not relate back to the original timely-filed Motion to Vacate, and is dismissed with prejudice as time-barred.

### B.  Procedural Default

Even if the Court were to consider the Petitioner's Motion to Vacate to be timely, the Petitioner's substantive claims of trial error would be procedurally barred.

Generally, claims that could have been, but were not, raised on direct review are procedurally barred by default.  As the Supreme Court has recognized, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation and internal quotation marks omitted).  Thus, in order to

collaterally attack a conviction or sentence based upon errors that could have been pursued on direct appeal, a petitioner must show either (1) "cause" and "actual prejudice" resulting from the errors complained of, or (2) that he is "actually innocent." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

The Petitioner's claims of "abuse of discretion" [Doc. 9 at 28-34] and "due process violation[s]" [id. at 35-39] allege substantive trial errors including: pre-indictment delay; evidentiary rulings; insufficient evidence; the denial of Petitioner's Rule 29 motion; and prosecutorial misconduct. These issues could have been raised on direct appeal. Further, to the extent that the Petitioner raised claims of prosecutorial misconduct and evidentiary challenges on direct appeal, they were rejected by the Fourth Circuit and will not be revisited the instant proceeding. See Boekenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (explaining that a defendant cannot relitigate issues previously rejected on direct appeal).

The Petitioner argues that his procedural default is excused because he is actually innocent of the offenses of conviction. He suggests that video surveillance evidence, which law enforcement failed to investigate, would have exonerated him. The Petitioner has not presented any such video evidence and has only asserted his conjecture that such even exists, much

less how it would exonerate him. The Petitioner has failed to come forward with any evidence from which a reasonable jury would have found him not guilty. His argument falls short of the actual innocence standard.

The Petitioner further appears to argue that appellate counsel's ineffective assistance on direct appeal constitutes cause and prejudice to excuse his procedural default of these claims. However, the Petitioner has failed to demonstrate any meritorious claim of ineffective assistance of trial or appellate counsel, see Section C, *infra,* and he fails to satisfy the cause and prejudice standard. See generally Mikalajunas, 186 F.3d at 493 (conduct by counsel that is not constitutionally defective cannot serve as cause and prejudice to excuse procedural default).

The Petitioner's substantive claims of trial error are therefore procedurally defaulted from § 2255 review.[6]

### C. Ineffective Assistance of Counsel

Even if the Court were to find the Petitioner's Motion to Vacate to be timely, the Petitioner's ineffective assistance of counsel claims would be denied and dismissed on the merits.

---

[6] Even if the Petitioner's substantive claims of trial error were not procedurally defaulted, they would be denied on the merits for the reasons set forth in the Government's Response. [See Doc. 15 at 20-24].

19

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S.

at 670. The Petitioner's claims of ineffective assistance are addressed in turn.

### 1. Pre-Indictment Delay

The Petitioner contends that counsel should have moved to dismiss the Superseding Indictment because the Government intentionally delayed indicting him to gain a tactical advantage. [Doc. 9 at 5-6]. The Petitioner argues that the delay prejudiced him because video surveillance footage would have exonerated him, and such footage was not available by the time of trial. [Id. at 6]. He contends that this argument had a reasonable probability of success and that counsel should have preserved the issue for appeal. [Id.].

The Fifth Amendment's Due Process Clause requires dismissal of an indictment if a delay prior to the indictment "caused substantial prejudice to [the defendant's] rights to a fair trial" and "was an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324 (1971). To prevail on such a claim, a defendant must first demonstrate that the delay resulted in "actual prejudice." United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403 (4th Cir. 1985). If this requirement is met, the courts then "balance[ ] the prejudice to the defendant with the Government's justification for the delay," to determine whether the

government's action "violate[d] fundamental conceptions of justice or the community's sense of fair play and decency." Id. at 404 (internal quotation marks omitted).

The Petitioner has failed to demonstrate actual prejudice. His supposition that the delay caused the loss of video surveillance evidence which would have exonerated him is speculative. See generally United States v. Kalbflesh, 621 F. App'x 157, 158–59 (4th Cir. 2015) ("Speculative or conclusory claims alleging 'possible' prejudice as a result of the passage of time are insufficient.") (quoting United States v. Bartlett, 794 F.2d 1285, 1290 (8th Cir. 1986)). Moreover, the Petitioner has failed to demonstrate that the delay was an intentional tactic. The DEA's investigation in the summer of 2016 was directed at Burt's suspected drug trafficking activities. Law enforcement only learned the name "Champ" after the September 13, 2016 traffic stop. [Doc. 15-1 at 182]. Agent Stites then investigated Champ's identity, arranged for Burt to make recorded calls, interviewed between eight and 10 individuals, and analyzed GPS tracking and cell phone records. [Doc. 15-1 at 87 *et seq.*, 218-22; Doc. 15-4 at 173 *et seq.*]. Defendants Burt, Oocumma, and Swimmer were indicted on April 4, 2017, less than seven months after Burt's arrest. [CR Doc. 1]. The Petitioner was charged in the Superseding Bill of Indictment on August 1, 2017, less than four months after

the initial Indictment, and less than a year after law enforcement first learned his name. [CR Docs. 1, 39]. The Petitioner has failed to come forward with any evidence that any delay in his charging was an intentional tactical device, rather than a justified continuing investigation. See, e.g., United States v. McKoy, 129 F. App'x 815, 819 (4th Cir. 2005) (denying pre-indictment delay claim on direct appeal where the record demonstrated that the Government's delay was justified by its investigation, and defendant failed to demonstrate that a deceased witness' testimony would have aided the defense); United States v. Nelson, 530 F.Supp.2d 719, 727 (D. Md. 2008) (denying motion to dismiss indictment because, even if defendant could demonstrate prejudice, a continuing investigation justified the nearly four-year delay). Counsel cannot be deemed ineffective for failing to raise this meritless claim that had no reasonable probability of success.

### 2. Plea Offer

The Petitioner argues that counsel was ineffective for: misadvising him about the plea offer and the consequences of rejecting it; forcing the Petitioner to proceed to trial; understating the strength of the Government's case; and failing to negotiate a more favorable offer. [Doc. 9 at 8-10; see Doc. 6-2 at 1-2]. The Petitioner contends that he would have pleaded guilty

on January 3, 2018 and would have received a lower sentence but for counsel's ineffectiveness. [Id. at 10].

Criminal defendants are entitled to the effective assistance of competent counsel during the plea bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156, 162 (2012); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145. To show prejudice where counsel's allegedly deficient performance led to the rejection of a plea offer, the defendant must demonstrate that, but for counsel's ineffective advice, a reasonable probability exists that the defendant would have accepted the plea, the prosecution would not have withdrawn it, the court would have accepted it, and that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id. at 147; Lafler, 566 U.S. 164.

First, the Petitioner contends that counsel misadvised him about the plea offer and the consequences of rejecting it. This claim is conclusively refuted by the record, which demonstrates that the Petitioner understood the plea and the consequences of rejecting it, including sentencing

24

considerations.  [Doc. 15-1 at 57-60]; see Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

The Petitioner's contention that counsel forced him to proceed to trial despite his wish to plead guilty on January 3, 2018, is likewise contradicted by his own statements in open court, [Doc. 15-1 at 59-60], and is rejected. See Blackledge, 431 U.S. at 74.

The Petitioner's argument that counsel was ineffective for telling him that the Government's case was weak and depended on the testimony of incredible witnesses also fails.  Assuming *arguendo* that counsel made such statements, they accurately reflect that many Government witnesses were drug users and dealers, had criminal records, had entered into plea agreements, and were incarcerated at the time of trial.  This also accurately reflected the Petitioner's own view of the witnesses' credibility and of the strength of the Government's case.  [See Doc. 15-4 at 302] (Petitioner's jail email referring to Swimmer, Oocumma, and Wise as "half dead junkies"); [CR Doc. 178 at ¶ 49 (Petitioner's PSR statement asserting that video surveillance and hotel logs would have demonstrated his innocence, and that

the "tangible" evidence discredits the co-conspirators' testimony)]; [Doc. 9 at 8 (arguing in the Amended Motion to Vacate that the case was "nothing more than a swearing match between the Government's witnesses….")].   The Petitioner has failed to demonstrate that counsel's alleged statements were inaccurate, unreasonable, or deficient.

The Petitioner's argument that counsel should have discussed with him a minor role reduction is unavailing because the plea offer contained no agreement regarding the Petitioner's role in the conspiracy.  [Doc. 15-6 at 2-3].  Moreover, reasonable counsel could have determined that a minor role reduction was inapplicable to the Petitioner's case.  See Section (C)(9), infra.

The Petitioner's suggestion that counsel was ineffective for failing to negotiate a more favorable plea offer [Doc. 9 at 9] is purely speculative.  The Petitioner has failed to present any evidence that a more favorable offer was forthcoming from the Government, or would have been acceptable to the Court.  See Frye, 566 U.S. at 147.

Finally, the Petitioner has failed to establish prejudice because he has not demonstrated a reasonable probability that he would have pleaded guilty but for counsel's allegedly deficient performance.  His present unsupported contention that he wanted to plead guilty is refuted by his own protestations of innocence throughout the proceedings.  See Lee v. United States, 137

26

S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."); [CR Doc. 178 at ¶ 49 (Petitioner's PSR statement maintaining his innocence)]. His present unsupported claim that he would have pleaded guilty but for counsel's performance is rejected.

### 3.    Failure to Investigate and Prepare a Defense

The Petitioner contends that trial counsel was ineffective in failing to investigate potential witnesses and evidence, failing to discuss defenses with the Petitioner, and failing to prepare and present an effective defense. [Doc. 9 at 5-8, 10-12]. The Petitioner argues that there is a reasonable probability that he would have been acquitted had counsel adequately investigated these matters, discussed them with the Petitioner, and prepared for trial. [Id.].

Counsel has a duty to make reasonable investigations or to reasonably decide that a particular investigation is unnecessary. Strickland, 466 U.S. at 690–91. A decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying "a heavy measure of deference to counsel's judgments." Id. at 691. To support an ineffective assistance claim based on counsel's failure to investigate, a petitioner must present specific information to show what favorable evidence the

investigation would have produced.  See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).  If there is no reasonable probability that a possible defense would have succeeded at trial, counsel's failure to investigate is not prejudicial.  See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

First, the Petitioner argues that he told counsel he "could potentially present an alibi defense for the night of September 12, 2016," and that the guest sign-in registry from the Petitioner's apartment "would reveal precisely who the [Petitioner] was with and his whereabouts."  [Doc. 9 at 6-7]. However, the Petitioner does not recall that day's events, and he has failed to come forward with any evidence to support an alibi defense.  His speculation that an alibi *could have* existed fails to demonstrate a prejudicial failure to investigate.  See United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

Second, the Petitioner argues that co-Defendant Wise admitted to his cellmates, Paul Lovingood and other unnamed individuals, that Wise did not know the Petitioner, never saw him at the time of the offenses, and "made up information" for Stites so he would "get a better deal."  [Doc. 9 at 8].  The Petitioner contends that there is a reasonable probability the jury would have found the Government's witnesses less credible had counsel investigated

28

Lovingood and called him at trial. This claim is speculative, as the Petitioner has failed to file the statement of Lovingood or any other cellmate with the Court. Moreover, the jury was aware through evidence presented at trial that Wise was initially dishonest with Stites because he "thought it might help [him];" that Wise had never met the Petitioner at the time of the offenses; and that Wise saw the Petitioner for the first time after Wise's arrest. [Doc. 15-4 at 29]. Any further testimony in this regard would have been cumulative and had no reasonable probability of affecting the verdict. See generally United States v. Dehlinger, 740 F.3d 315 (4th Cir. 2014) (no adverse effect results from a lawyer's decision not to call witnesses whose testimony would be cumulative or potentially damaging).

Third, the Petitioner contends that counsel failed to investigate "key video surveillance" from the locations of the alleged drug deals, which he contends would have conclusively exonerated him. [Doc. 9 at 5-6]. This claim is purely speculative, as the Petitioner has failed to come forward with any video or other exculpatory evidence. The Petitioner has not even come forward with evidence that there were surveillance cameras positioned in those areas that might have captured images favorable to the Petitioner. Moreover, the Petitioner has failed to demonstrate prejudice, as counsel cross-examined the law enforcement witnesses about the failure to obtain

video surveillance and other evidence, and argued that the investigation was incomplete.  See Dehlinger, 740 F.3d at 315.

Fourth, the Petitioner argues that counsel should have obtained a voice analysis because the Petitioner denied that his voice was on the recorded phone calls, and counsel acknowledged that the recording did not sound like the Petitioner.  [Doc. 9 at 10-11].  He claims that the jury would have found that Burt was not credible if the recorded calls had been excluded.  [Id. at 11].  Once again, this claim is purely speculative, as the Petitioner has failed to come forward with any evidence demonstrating that his voice was not on the recorded calls.  Moreover, Burt's credibility and the adequacy of the investigation were before the jury for consideration.  [Doc. 15-4 at 291-92].  Further, reasonable counsel could have concluded that voice analysis would risk confirming that it was indeed the Petitioner's voice on the recorded calls, thus undermining the theory of defense.  See, e.g., Shippy v. United States, 112 F.Supp.3d 355, 363-64 (W.D.N.C. 2015) (counsel was not ineffective for declining to seek voice analysis of recorded phone calls because, if testing had confirmed that it was petitioner speaking, the defense that he was not involved in the charged cocaine distribution conspiracy would have been destroyed).

Fifth, the Petitioner contends that counsel was ineffective for failing to adequately impeach Burt and Oocumma with their September 13, 2016 videotaped statements to police, even though counsel referred to those videotapes during opening. [Doc. 9 at 13-15; <u>see</u> 15-1 at 80]. The Petitioner argues that effective counsel would have used the videotapes to undermine Burt and Oocumma's credibility. [Doc. 9 at 14-15]. This argument is too vague and conclusory to support relief in that the Petitioner fails to identify what portions of the video statements counsel should have introduced at trial. <u>See</u> <u>Dyess</u>, 730 F.3d at 354. Further, this claim is refuted by the record insofar as counsel impeached Burt and Oocumma with their prior inconsistent statements. [<u>See</u> Doc. 15-3 at 129-30, 133-34, 138, 314-15, 317-22, 327-28]. The Petitioner fails to explain why there would have been a reasonable probability of a different outcome had counsel played the videotaped statements at trial. Further, reasonable counsel could have concluded that cross-examining Burt and Oocumma was preferable to replaying their damaging recorded statements. <u>See</u> <u>generally</u> <u>Dehlinger</u>, 740 F.3d at 315.

Next, the Petitioner contends that counsel failed to prepare and present a buyer-seller defense. [Doc. 9 at 11-12]. The Petitioner contends that he told counsel that he met with the co-conspirators between three and

five times in late July 2016, and that they never purchased more than an ounce or two of drugs. [Id. at 12]. Rather than preparing a buyer-seller defense, counsel planned to "impeach the hell out of the witnesses" and "poke holes in everything they say." [Id.].

To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove that "(1) [the defendant] entered into an agreement with one or more persons to engage in conduct that violated 21 U.S.C. § [ ] 841(a)(1) ...; (2) that [the defendant] had knowledge of that conspiracy; and (3) that [the defendant] knowingly and voluntarily participated in the conspiracy." United States v. Mastrapa, 509 F.3d 652, 657 (4th Cir. 2007). Given the "clandestine and covert" nature of conspiracies, the government can prove the existence of a conspiracy by circumstantial evidence alone. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). A mere buyer-seller relationship is insufficient to support a conspiracy conviction. United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011). However, such evidence "is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." Id. (quoting United States v. Mills, 995 F.2d 480, 485 n. 1 (4th Cir. 1993)). "[E]vidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled

32

with substantial quantities of drugs." United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008) (citing Burgos, 94 F.3d at 858).

The evidence presented at trial demonstrated that the co-conspirators purchased large amounts of highly pure methamphetamine from the Petitioner every few days over the course of many weeks in order to re-sell it in North Carolina. This included the 251 ounces of 99% pure methamphetamine (248.9 grams of methamphetamine actual) that was seized in the September 13 traffic stop. [Doc. 15-1 at 172]. The Petitioner has not come forward with any evidence that would have supported a buyer-seller defense. Moreover, a buyer-seller defense would have undermined the defense's misidentification theory and thus counsel rejected this approach in favor of what he reasonably found to be more likely to succeed. See Turk v. White, 116 F.3d 1264, 1265 (9th Cir. 1997) (counsel is not ineffective for failing to investigate a theory that would contradict the defense theory of the case). Counsel cannot be deemed deficient for choosing not to present an unsupported and potentially damaging defense.

Finally, the Petitioner contends that counsel was ineffective for failing to discuss the elements of the offense and possible defenses with him. [Doc. 9 at 12]. This claim is too vague and conclusory to support relief. The Petitioner does not identify the additional matters counsel should have

33

discussed with him that had a reasonable probability of resulting in a different trial outcome. See Dyess, 730 F.3d at 354 (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court); United States v. Blackstone, No. 1:12-cr-22-14, 2015 WL 6072240, at *3 (W.D. Va. Oct. 15, 2015) (dismissing an ineffective assistance of counsel claim based on failure to adequately communicate where the movant provided no evidence in support of his claim and did not describe how he was prejudiced by counsel's alleged failure to communicate).

Therefore, the Petitioner's claims that counsel was ineffective for failing to adequately investigate and prepare the case are denied.

### 4. Evidentiary Objections

The Petitioner argues that counsel should have made various evidentiary objections and that counsel's failure to object unduly prejudiced him. [Doc. 9 at 15-19].

First, the Petitioner contends that Exhibit 7A, a DEA chemical analysis, was improperly introduced through a lay witness (Agent Stites), and that counsel's failure to object was prejudicial because the Government "weaponized" the exhibit by noting the methamphetamine's large quantity and high purity level. [Doc. 9 at 15; see Doc. 15-1 at 171-72]. This claim

34

fails because Exhibit 7A was admitted pursuant to the parties' stipulation. [CR Doc. 149].  Even if counsel erred in stipulating to the admission of this exhibit, the Petitioner's claim in this regard would still fail because in the absence of the stipulation the Government would merely have called the chemist as a witness.  Counsel made the reasonable tactical decision not to challenge this evidence.

Second, the Petitioner argues that Agent Stites improperly provided overview testimony, identified the Petitioner at trial and in the recorded phone calls, and stated that the Petitioner was Burt's "source of supply."  [See Doc. 15-1 at 192, 217-18, 227].  The Petitioner contends that this was improper opinion testimony outside of Agent Stites' personal knowledge, and usurped the jury's fact-finding role.

Under Rule 701, lay opinion testimony is admissible if (1) it is "rationally based on the witness's perception," (2) is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) it is "not based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid.] 702."  Fed. R. Evid. 701.  Lay opinion testimony under Rule 701 must be based "on personal knowledge."  United States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010) (internal quotation marks omitted).  "[A]dequately build[ing] a foundation for lay testimony" requires

35

that the testimony "be based on the perception of the witness." Id. at 292-93 (internal quotation marks omitted).

Agent Stites described the investigation to explain the process that led to the discovery of the Petitioner as Burt's source of supply. Agent Stites testified based on his personal knowledge. Likewise, Agent Stites identified the Petitioner in court based on Stites' personal interview and interaction with the Petitioner. United States v. Love, 767 F.2d 1052 (4th Cir. 1985) ("an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken" because it is not being admitted for its truth); United States v. Mack, 495 F. App'x 359 (4th Cir. 2012) (detective's testimony that a utility bill had defendant's name on it was not inadmissible hearsay because the prosecution's purpose in asking about the bill was for the detective to report the result of his investigation, not to prove the truth of the matter asserted in the bill). Stites' testimony about the course of the investigation was within his personal knowledge. See United States v. Suleitopa, 719 F. App'x 233, 234–35 (4th Cir. 2018) (affirming admission of testimony from case agent "about clothing worn by and the identity of the suspect depicted in surveillance video"). Moreover, Stites' testimony about the Petitioner's identity and his role in the offense was cumulative of the testimony of multiple other witnesses. Counsel made the

36

very reasonable tactical decision not to object to Stites' testimony on this basis.

Third, the Petitioner argues that counsel was ineffective for failing to object to lack of foundation for Exhibits 32, 33, and 52, which he describes as photographs that were allegedly taken from the Petitioner's Facebook and Instagram accounts. The Petitioner contends that records custodians were required to prove that the photographs were downloaded from the Petitioner's social media accounts, and that the failure to object allowed the Government to use the exhibits as substantive evidence, which bolstered its case.

Counsel objected to Exhibit 32, a photograph of Burt, Angel Barnes, and the Petitioner that law enforcement downloaded from Burt's phone. [Doc. 15-2 at 260]. The Court sustained the objection. [Id.]. The Government then laid a foundation through Burt regarding where and when the photo was taken and how Burt obtained it, and establishing that it was a fair and accurate representation of Burt, Angel, and the Petitioner. [Id. at 261-62]; see generally Fed. R. Ev. 901(b)(1) (a proponent may authenticate or identify evidence through testimony of a witness with knowledge that the item is what it is claimed to be); United States v. Idleman, 853 F. App'x 819 (4th Cir. 2021) (it was not an abuse of discretion to admit a photograph

depicting relevant evidence of narcotics proceeds where a witness had personal knowledge of the challenged exhibit). This foundation was adequate, no records custodian was required, and the Petitioner has failed to identify any other meritorious basis for objection.

The Court sustained several objections to Exhibit 33, a photograph of the Petitioner in front of his black Chrysler 200 and his condominium building [Doc. 15-2 at 264-67, 346-49]. The Government then moved to admit Exhibit 33 for illustrative purposes based on Burt's testimony that the photograph fairly and accurately depicted the Petitioner, the black Chrysler, and the condominium building [id. at 349], and counsel again objected [id. at 350]. The Court overruled the objection and instructed the jury that the photograph was only for illustrative purposes rather than as substantive evidence. [Id.]. The Government subsequently moved to admit for illustrative purposes Exhibit 52, a photograph of Petitioner standing in front of a black truck, after Burt testified that it fairly and accurately depicted the Petitioner and the truck she saw on September 13, 2016. [Doc. 15-3 at 18-19]. Counsel did not object to the admission of Exhibit 52.

Burt's testimony provided an adequate foundation for these exhibits' use as illustrative evidence. See Fed. R. Civ. P. 901; 2 McCormick On Evid. § 214 (8th ed. 2020) (explaining that authentication for a demonstrative aid is

satisfied if a witness identifies an aid as a substantially correct representation of something the witness once perceived and is now describing). Burt's testimony provided a sufficient foundation for the admission of these photos as these illustrative aids helped explain Burt's testimony. The jury was instructed to consider these photos only as illustrative aids. Therefore, no testimony from a records custodian was required. See United States v. Sampler, 368 F. App'x 362, 367 (4th Cir. 2010) (the government is permitted to use illustrative devices so long as they help the jury understand the evidence presented, and the court ensures that the jury does not consider the devices, themselves, as evidence). Under these circumstances, counsel's actions were well within reasonable litigation practice.

Fourth, the Petitioner contends that counsel failed to object to Exhibits 11A, 20, 27, and 44A as hearsay. Exhibit 11A is an extraction report from Marissa Burt's cell phone that was admitted pursuant to the parties' stipulation regarding authentication and foundation. [Doc. 15-1 at 84, 180-81, 210; CR Doc. 151]. The Petitioner argues that the text messages from Burt's cell phone are hearsay and do not qualify under the co-conspirator statement exception to the hearsay rule. However, Agent Stites described how the records were extracted from Burt's cell phone [Doc. 15-1 at 188], how Burt identified the relevant phone numbers, and how those records

corresponded to her trips to Atlanta and meetings with the Petitioner [see Doc. 15-2 at 308-12]. As such, this evidence tends to show the connection between Burt and the Petitioner, and what messages were exchanged. This evidence was not offered to prove the truth of any factual assertion contained in the text messages, and as such is not hearsay. See United States v. Ayala, 601 F.3d 256, 272 (4th Cir. 2010) ("'[E]vidence is not hearsay when it is used only to prove that a prior statement was made[.]'") (quoting Anderson v. United States, 417 U.S. 211, 220 n. 8 (1974)); United States v. Safari, 849 F.2d 891, 894 (4th Cir. 1988) (a statement is not hearsay if offered to "show ... [the listener's] knowledge"); see also United States v. Ibisevic, 675 F.3d 342, 349 (4th Cir. 2012) (noting parenthetically that "statements offered to prove 'that they were made and that [the defendant] believed them to be true'" are not hearsay (quoting United States v. Kohan, 806 F.2d 18, 22 (2d Cir. 1986)). For these reasons, defense counsel's actions in stipulating to these texts was well within regular and reasonable practice. A defense attorney needs to pick his/her battles. It is not good practice to object to everything or to raise a challenge that is of no merit.

Further, the Petitioner's contention that the prosecutor intentionally confused and misled the jury by jumping between text message and email strings is refuted by the record. Although voluminous records were

presented at trial, no deliberate or prejudicial confusion was present. Therefore, counsel was not deficient for failing to object.

Exhibits 20, 27, and 44A are drug ledgers and a "to-do list" that Burt created to keep track of drug amounts and of the people who owed her money. [Doc. 15-2 at 52, 451, 445-46, 450-51]. These matters were within Burt's personal knowledge, and any objection to these exhibits would have been overruled. See Fed. R. Evid. 801(d)(2)(E) (addressing statements of co-conspirators); United States v. Hatten, 225 F.3d 656 (4th Cir. 2000) (admitting drug ledger that was identified as a record of drug transactions kept by the co-conspirator was not an abuse of discretion).

Moreover, the Petitioner cannot establish that he was prejudiced by counsel's handling of these evidentiary matters in light of the overwhelming evidence of his guilt. There is no reasonable probability that, absent these alleged errors, the trial's outcome would have been different. See Strickland, 466 U.S. at 695; Eaton v. Angelone, 139 F.3d 990, 994 (4th Cir.1998) ("[I]n the face of the [prosecution's] overwhelming evidence, we can ascribe no prejudice to any alleged errors by counsel...."). These claims are denied.

### 5. Sequestration Order

The Petitioner argues that counsel was ineffective for failing to object that the sequestration order was violated when the co-Defendants were held

and transported together during trial and when Burt and Swimmer allegedly "could be heard early one morning [during trial] yelling about the Movant's 'black truck.'"  [Doc. 9 at 20].

Federal Rule of Evidence 615 requires a district court, at the request of a party, to "order witnesses excluded so that they cannot hear other witnesses' testimony."  Fed. R. Evid. 615.  The rule exists "to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial."  United States v. Leggett, 326 F. 2d 613, 613 (4th Cir. 1964).  The rule "serves only to exclude witnesses from the courtroom." United States v. Rhynes, 218 F.3d 310, 316 (4th Cir. 2000) (plurality).  When the complained-of conduct occurs outside of the courtroom, a presumption of prejudice does not apply and the defendant must show that "he was harmed by the out-of-courtroom conversations between witnesses."  United States v. Ali, 991 F.3d 561, 568 (4th Cir. 2021).

This claim is refuted by the record insofar as counsel raised concerns about witnesses contact during trial.  [Doc. 15-2 at 279-80].  The Court instructed counsel to direct any concerns to the Marshals Service.  [Id.]. Counsel was not deficient for failing to take further action because the holding or transporting of witnesses together, standing alone, does not violate the sequestration rule.  See United States v. Eccleston, 615 F. App'x

767, 784 (4th Cir. 2015) ("the cohabitation of witnesses in a holding cell is ordinarily insufficient to constitute a violation of a district court's sequestration order where the defendant has failed to request a sequestration order explicitly banning cohabitation of witnesses, and where the defendant presents only speculation that a sequestration order has been otherwise violated.").  Counsel also addressed witness contacts during the cross-examination of Burt, Oocumma, and Swimmer, and the jury heard that some out-of-court contacts among witnesses had occurred.  [See Doc. 15-3 at 138-43, 213-14, 319; Doc. 15-4 at 136-37].  Counsel specifically asked Burt about the alleged black truck discussion, which Burt adamantly denied because such would cause Burt to "lose [her] plea…."  [Doc. 15-3 at 229]. The Petitioner has failed to explain what more counsel could have done in this regard that had a reasonable probability of affecting the trial outcome. Nor has he demonstrated that he was harmed by any of the alleged witness contact in any way.  Accordingly, this claim is denied.

### 6.    Jury Instructions

Petitioner argues that counsel was ineffective for failing to request instructions on multiple conspiracies and the buyer-seller defense.  [Doc. 9 at 13, 22].  He contends that the Court suggested that a buyer-seller defense would have been strong and, if counsel had requested appropriate jury

instructions, the jury would have found that the Petitioner was involved in an uncharged conspiracy and would have returned a more favorable verdict.

As a general matter, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." United States v. Hackley, 662 F.3d 671, 681 (4th Cir. 2011), *as corrected* (quoting Mathews v. United States, 485 U.S. 58, 63 (4th Cir. 1988)). The prejudice inquiry in the context of counsel's failure to request a jury instruction is: "(1) whether the instruction, if requested, should have been given; and (2) if the instruction had been given, was there a reasonable probability that the outcome of the proceedings would have been different." United States v. Luck, 611 F.3d 183, 189 (4th Cir. 2010).

A buyer-seller instruction instructs that the mere purchase and sale of narcotics standing alone is insufficient to establish a conspiratorial agreement to distribute narcotics. United States v. Haymon, No. 4438, 2021 WL 4495813, at *3-4 (4th Cir. Oct. 1, 2021); United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993). Evidence of a buyer-seller relationship, coupled with evidence of a "substantial quantity of drugs," is sufficient to establish a conspiracy. United States v. Yearwood, 518 F.3d 220, 226 (4th Cir. 2008); United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011). It is within a court's discretion to deny a buyer-seller instruction when the evidence

reveals that the relationship between the alleged conspirators goes beyond a mere drug transaction. Mills, 995 F.2d at 485.

As a preliminary matter, the Petitioner's contention that the Court supported a buyer-seller defense mischaracterizes the record. During argument on Petitioner's Rule 29 motion, the Court commented that even if counsel could make such arguments to the jury, they did not warrant a judgment of acquittal. [Doc. 15-4 at 160-63].

The Petitioner's contention that counsel was ineffective for failing to request a buyer-seller jury instruction likewise fails. The Government presented evidence that the Petitioner sold to the co-Defendants every few days over the course of several weeks large amounts of high-quality methamphetamine, which the co-Defendants took back to North Carolina for resale. A buyer-seller instruction was not warranted under these circumstances. See United States v. Grover, 85 F.3d 617 (4th Cir. 1996) (no error in denying a buyer-seller instruction where the evidence showed the defendant was involved with distributable quantities of drugs on a regular basis). Had counsel requested the instruction, it would have been denied and, even if the instruction were given, there is no reasonable probability of a different verdict in light of the strong evidence of Petitioner's guilt. See, e.g., Britton v. United States, No. 5:12-cr-14-02, 2017 WL 1410843 (W.D.

Va. Apr. 19, 2017) (counsel's failure to request buyer-seller instruction was not prejudicial where no reasonable juror could have concluded that petitioner's role was as a mere buyer or seller); <u>United States v. White</u>, No. 6:01-382-24, 2002 WL 32079464, *3 (D.S.C. August 6, 2002)(no rational jury could have found a mere buyer-seller relationship where the evidence showed numerous transactions involving drug amounts far in excess of what reasonably could be considered for personal use). Moreover, counsel could have reasonably concluded that requesting a buyer-seller instruction would have undermined the Petitioner's defense theory that he was being framed by the co-conspirators. [<u>See</u> Doc. 15-4 at 288-94, 297]. This is particularly true in this case because one of the counts against the Petitioner was as a seller (Count Five). As such, presenting such an argument would likely be seen as an admission of guilt.

Nor has the Petitioner demonstrated that counsel was ineffective for failing to request a multiple conspiracy instruction. "A court need only instruct on multiple conspiracies if such an instruction is supported by the facts." <u>Mills</u>, 995 F.2d at 485. "A multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved only in separate conspiracies unrelated to the overall conspiracy charged in the indictment." <u>United States v. Kennedy</u>, 32 F.3d 876, 884 (4th Cir. 1994)

(internal quotation marks omitted). Moreover, "even if one overarching conspiracy is not evident, the district court's failure to give a multiple conspiracies instruction is reversible error only when . . . the evidence of multiple conspiracies [was] so strong in relation to that of a single conspiracy that the jury probably would have acquitted on the conspiracy count had it been given a cautionary multiple-conspiracy instruction." United States v. Bartko, 728 F.3d 327, 344 (4th Cir. 2013) (internal quotation marks omitted). "A single conspiracy exists, when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." United States v. Johnson, 54 F.3d 1150, 1154 (4th Cir.1995) (internal quotation marks omitted). Error will be found in a conspiracy instruction "if the proof of multiple conspiracies was likely to have confused the jury into imputing guilt to [the defendant] as a member of one conspiracy because of the illegal activity of members of the other conspiracy." United States v. Roberts, 262 F.3d 286, 294 (4th Cir. 2001).

Here, the evidence overwhelmingly proved the existence of a methamphetamine trafficking conspiracy where the Petitioner supplied Burt and others with large amounts of high-purity methamphetamine, which they transported back to North Carolina for resale. Evidence including testimony from several co-conspirators demonstrated that the conspiracy had the same

objectives, goal, nature, geographic spread, result, and product. Counsel was not ineffective for failing to request a multiple conspiracy instruction because it was not supported by the evidence, and a request for such an instruction would have been denied. Counsel could have reasonably concluded that a multiple conspiracy instruction would have conflicted with the defense theories that the Petitioner was innocent and that Burt had a different source of supply. [Doc. 15-4 at 296]. Moreover, even if the multiple conspiracy instruction had been given, there is no reasonable probability that the trial would have ended more favorably for Petitioner in light of the strong evidence of his guilt.

The Petitioner has failed to demonstrate either deficient performance or prejudice with regard to the jury instructions and these claims are denied.

### 7. Prosecutorial Misconduct

The Petitioner contends that counsel was ineffective for failing to object to the prosecutor's improper closing arguments. [Doc. 9 at 19-20].

The Petitioner argued on direct appeal that the prosecutor improperly commented that the Petitioner was poisoning the community and was to blame for individuals who are jobless with missing teeth, and for asking Burt during her examination how drugs had affected her life. [4th Cir. Case No. 18-4274, Doc. 26]. The Fourth Circuit rejected this claim because its "review

48

of the record [did] not reveal the existence of any prosecutorial misconduct." Champion, 777 F. App'x at 69.  The Petitioner's attempt to recast these arguments in terms of ineffective assistance of counsel is rejected.  See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]"); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion).

The Petitioner now further argues that counsel was ineffective for failing to object to arguments that referred to matters outside the evidence; that exaggerated, misconstrued, and manipulated the evidence; that improperly relied on evidence that was admitted for a limited purpose as substantive evidence; that demonized the Petitioner through improper use of bad character evidence; that vouched for the Government's case; and that purportedly commented on Petitioner's silence.  The record reflects that no prosecutorial misconduct occurred to which reasonable counsel would have objected.[7]  [See Doc. 154 at 266-76, 299-312].  Further, there is no

_____

[7] The transcript of the prosecutor's closing argument does not support Petitioner's argument as to what was said.

49

reasonable probability that the outcome of trial would have been different had counsel objected, in light of the strong evidence of the Petitioner's guilt. See Jeffers v. Leeke, 835 F.2d 522, 525-27 (4th Cir. 1987) (rejecting claim that counsel was ineffective for failing to object to allegedly improper comments because they were harmless in light of the evidence). Therefore, the Petitioner's claim that counsel was ineffective with regard to prosecutorial misconduct is denied.

### 8.  Cumulative Error

The Petitioner contends that counsel was ineffective for failing to move for a mistrial based on the prosecutor's "cumulative and egregious conduct … throughout the trial and his rebuttal summation."  [Doc. 9 at 21].

Generally, if claims do not warrant relief individually, a court will decline to find cumulative error.   United States v. Basham, 561 F.3d 302, 330 (4th Cir. 2009).  Here, the Petitioner has failed to demonstrate that any individual errors occurred.  Counsel, therefore, was not ineffective for failing to move for mistrial on the basis of cumulative error.  See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").  Accordingly, this claim is denied.

### 9. Sentencing

The Petitioner contends that counsel was ineffective for failing to adequately communicate with the Petitioner before the sentencing hearing and for failing to prepare for sentencing. [Doc. 9 at 22]. He argues that the PSR objection counsel filed was meritless, that counsel failed to object to inaccurate PSR data, and that this resulted in a higher sentence. [Id. at 22-25].

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Petitioner complains that counsel "essentially abandoned" him by failing to communicate between the verdict and sentencing, and by failing to prepare for sentencing. [Doc. 9 at 22]. The record reflects that the Petitioner received the PSR six days before the sentencing hearing and reviewed it with counsel on the day of sentencing. [Doc. 15-4 at 352-53]. Counsel was not required to confer with the Petitioner for a particular length of time prior to sentencing, and the Petitioner stated in open court that he had had adequate time to discuss the PSR with counsel. [Id. at 353-54]. The Petitioner has failed to explain how additional discussion would have led to a lower sentence. Further, the individual sentencing issues that the

51

Petitioner raises are meritless for the reasons that follow, so counsel cannot be deemed ineffective for failing to raise them.

First, the Petitioner argues that, by failing to object to PSR ¶ 10, counsel essentially stipulated that the Petitioner was responsible for over 2 kilos of methamphetamine, which the Petitioner contends is a "gross miscalculation." [Doc. 9 at 24]. This claim is refuted by the record insofar as counsel argued that the Petitioner should be sentenced for 252 grams of methamphetamine rather than 2.04 kilograms in the PSR. [CR Doc. 188 at 10]. The Court sustained the objection in part, and reduced the drug quantity to 1.1 kilograms. [Id. at 20-23]. This reduced the base offense level to 34, and reduced the advisory guideline range to 262 to 327 months' imprisonment. [Id.].

Second, the Petitioner argues that counsel should have sought a minor role reduction of at least two offense levels. Specifically, the Petitioner argues that he was less culpable that the average participant in the case; that he merely "facilitated four or five transactions;" that he had no knowledge of the scope and structure of the criminal activity; that he was not part of planning or organizing the criminal activity; that he did not have any influence in the decision making and authority; that he essentially acted as a conduit;

that he had no stake in the venture; and that he did not stand to benefit from Burt's activity. [Doc. 9 at 24].

Section 3B1.2 provides for a decrease in the offense level if the defendant was a minimal or minor participant in any criminal activity. U.S.S.G. § 3B1.2 (2016). The minimal role reduction applies to defendants who are "plainly among the least culpable of those involved in the conduct of a group" as indicated by the defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others…." U.S.S.G. § 3B1.2, app. note 4 (2016). The minor role adjustment applies to defendants who are "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, app. note 5. The inquiry is fact-specific and based on the totality of the circumstances. USSG § 3B1.2 app. note 3(b).

Counsel was not ineffective for failing to request a minor role reduction because the evidence demonstrated that the Petitioner played a central role in the conspiracy as a drug supplier. See United States v. Brooks, 957 F.2d 1138 (4th Cir. 1992) (a seller holds a "central position in a drug distribution conspiracy," and is not a minor role); United States v. Payton, 302 F. App'x 225 (4th Cir. 2008) (seller in drug distribution conspiracy was not entitled to a role reduction even though he participated in the conspiracy for a relatively

short period); <u>United States v. McDonald</u>, No. 3:04-CR-00092, 2009 WL 2058527, at *17 (W.D. Va. July 14, 2009) (drug supplier was not entitled to a role reduction and counsel was not ineffective for failing to raise the issue).

The Petitioner contends that counsel was ineffective for failing to challenge the three criminal history points that he was assessed for the statutory rape conviction in PSR ¶ 28. This claim is conclusively refuted by the record insofar as counsel objected that the offense should not have been scored because statutory rape is now treated as a misdemeanor under Georgia law. [CR Doc. 177]. The Petitioner further argues that he should have received two criminal history points, rather than three, because the original disposition of the case was a "probated sentence of five years," he was imprisoned for less than one year when probation was revoked, and he successfully completed probation. [Doc. 9 at 23]. As the Court explained at the sentencing hearing, however, the scoring of this conviction was correct because the Petitioner had served an aggregate of more than one year and one month for this conviction. U.S.S.G. § 4A1.2(k)(1) (2016); [<u>see</u> CR Doc. 178 at ¶ 28; Doc. 15-4 at 356-57]. Accordingly, this conviction was correctly scored with three criminal history points.

The Petitioner contends that PSR ¶ 36 should not have been scored because the Petitioner was not represented by counsel and had "agreed to

plead out with the prosecutor" in that case. [Doc. 9 at 23]. He also appears to assert that this offense is now a misdemeanor under Georgia law. [Id. at 24]. In support of this argument, the Petitioner has filed a copy of the Motion for Appropriate Relief that he filed in Henry County, Georgia, Superior Court in August 2020. [Doc. 9-1].

The offense in PSR ¶ 36 is for possession of marijuana "greater than one ounce" to which the Petitioner pleaded guilty and was sentenced to three years' imprisonment. [CR Doc. 178 at ¶ 36]. The PSR indicates that the Petitioner was "represented by counsel" in that case. [Id.]. The Petitioner has failed to come forward with any evidence demonstrating that this conviction was uncounseled.[8] Assuming *arguendo* that the Petitioner was not represented, the conviction was properly scored three criminal history points because the Petitioner agreed to plead out with the prosecutor. See United States v. Hawley, 919 F.3d 252, 257-58 (4th Cir. 2019) (uncounseled misdemeanor was properly scored with criminal history points because the defendant voluntarily waived his right to counsel). Nor has the Petitioner demonstrated that possession of "greater than 1 oz" of marijuana in violation

---

[8] The Petitioner argues in the MAR that he "appeared without the benefit of effective representation of counsel as guaranteed by the 6th Amendment" in that case. [Doc. 9-1 at 4]. Assuming *arguendo* that this claim alleges that the Petitioner was unrepresented, the Petitioner has failed to demonstrate that the MAR was granted. Even so, the Petitioner fails to explain how the August 2020 MAR demonstrates that counsel was ineffective more than two years earlier at his federal sentencing in April 2018.

of Ga. Code § 16-13-30(j) is now a misdemeanor under Georgia law. [Doc. 9-1 at 3; see CR Doc. 178 at ¶ 36]; Ga. Code § 16-13-30(j)(2). Cf. Ga. Code § 16-13-2(b) (providing that possession of "one ounce or less" of marijuana is a misdemeanor). Counsel was not ineffective for failing to object to that offense's scoring. Moreover, criminal history scoring is based on the sentence imposed and served, not on what sentence would hypothetically be imposed today.

Next, the Petitioner argues that counsel should have requested a downward departure because the PSR overstates his criminal history category with regards to the foregoing Georgia convictions. [Doc. 9 at 24-25]. The Sentencing Guidelines provide that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes…." U.S.S.G. § 4A1.3(b)(1) (2016). The Petitioner has failed to demonstrate that the PSR substantially over-represented the seriousness of his criminal history and, if counsel had raised that argument, it would have been rejected.

Finally, the Petitioner appears to argue that counsel failed to seek a downward departure pursuant to U.S.S.G. § 5K2.0 to avoid an unwarranted

sentencing disparity with the co-Defendants, who were more culpable than the Petitioner. [Doc. 9 at 25-26].

Guidelines § 5K2.0 is a catch-all provision allowing departure where "there exists an aggravating or mitigating circumstance … of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0(a)(1) (2016). "The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government." United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996).

The Petitioner, unlike his co-Defendants, was a methamphetamine supplier, he did not cooperate with the Government, and he did not accept responsibility for his offenses. See United States v. Perez-Pena, 453 F.3d 236, 243 (4th Cir. 2006) ("comparing the sentences of defendants who helped the government to those of defendants who did not … is comparing apples and oranges" for the purpose of considering sentencing disparities); United States v. Lester, 816 F. App'x 780 (4th Cir. 2020) (finding that a defendant

was not similarly situated to a co-defendants who pleaded guilty, accepted responsibility, and cooperated with the government, or who played less of a role in the conspiracy). The Petitioner has failed to raise any meritorious disparity argument and, if counsel had asserted one, it would have been rejected. Moreover, the record reflects that the Court adequately considered the sentencing factors pursuant to 18 U.S.C. § 3553(a), including disparity. [Doc. 15-4 at 378-79]. Further argument in this regard would not have changed the Petitioner's sentence.

In sum, the Petitioner has failed to identify any sentencing argument that reasonable counsel would have raised, and had a reasonable probability of resulting in a lower sentence than the one counsel achieved. Accordingly, Petitioner's claims of ineffective assistance are denied.

### 10. Direct Appeal

Finally, the Petitioner contends that he was constructively denied counsel on direct appeal.

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable

58

probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability . . . he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

First, the Petitioner argues that appellate counsel initially told the Petitioner that the only issue that concerned counsel was the delay in bringing the Petitioner before a magistrate judge in violation of Rule 5 of the Federal Rules of Criminal Procedure, even though that claim did not warrant reversal of the conviction. The Petitioner cannot demonstrate that counsel was ineffective for raising this arguable claim.

Next, Petitioner argues that counsel was deficient for raising co-Defendant Burt's description of the "impact of meth" on her life, even though the challenged remark represented less than half of a transcript page. [Doc. 9 at 26]. It was proper for counsel to raise this arguable claim on direct appeal. The fact that this claim was rejected does not mean that appellate counsel was ineffective for presenting it.

The Petitioner argues that counsel did not properly brief the claim that prosecutorial misconduct amounted to cumulative error, and that counsel apparently failed to read the prosecutor's rebuttal closing argument. [Doc. 9 at 26]. The Petitioner's argument that counsel did not read the transcript is speculative and, in any event, there is no reasonable probability that additional argument about prosecutorial misconduct and cumulative error would have succeeded had counsel asserted them on direct appeal. The

60

Fourth Circuit determined that no plain error occurred, and the record reflects that the argument was proper and not deny the Petitioner a fair trial.

The Petitioner contends that he called appellate counsel and wrote letters raising "several issues that clearly have more merit than the issues raised" i.e., "the pre-indictment delay; the Confrontation Clause and the Attorney weaponizing Government Exhibit 7A; Agent Stites' overview testimony; the repeated misstatement of evidence and arguing and alluding to evidence not contained in the trial record." [Doc. 9 at 26]. Counsel was not ineffective for failing to raise these claims on direct appeal because they are meritless as discussed in Sections (C)(1), (3), and (7), *supra.*

Finally, the Petitioner argues that counsel was ineffective for failing to argue on direct appeal that trial counsel was ineffective with regards to the plea agreement, even though the claim was apparent on the face of the record. [Doc. 9 at 26-27; see Doc. 6-2 at 2]. Appellate counsel was not deficient for failing to raise the meritless claim of ineffective assistance with regards to the plea offer. See Section (C)(2), *supra*.

The Petitioner has failed to demonstrate that counsel failed to raise an issue that was stronger than those presented on direct appeal, or that any of the claims he has identified had a reasonable probability of success had

61

counsel raised them. The Petitioner's claims of ineffective assistance of appellate counsel are therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Petitioner's Motion to Vacate and Amended Motion to Vacate are dismissed with prejudice and denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion to Dismiss [Doc. 13] is **GRANTED**.

2. The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and the Amended Motion to Vacate, Set

62

Aside or Correct Sentence [Doc. 9] are **DENIED** and **DISMISSED WITH PREJUDICE.**

3.   The Petitioner's Motion for Extension of Time [Doc. 17] is **GRANTED** insofar as the Response is accepted as timely filed.

4.   Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: March 2, 2022

Martin Reidinger
Chief United States District Judge