# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:17-cr-00046-MR-WCM-5

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| RICHARD ARLEE CHAMPION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Reduction in Term of Incarceration 18 U.S.C. § 3582(c)(1)(A)" [Doc. 230]; the Defendant's "Motion for Appointment of Counsel" [Doc. 232]; and the Defendant's "Motion for Leave of Court to File Supplemental Ground for Relief" [Doc. 233].

**I.    BACKGROUND**

On August 1, 2017, the Defendant Richard Arlee Champion was charged in a Superseding Bill of Indictment[1] along with five co-defendants in a methamphetamine trafficking conspiracy. [Doc. 39]. The Defendant was charged with one count of conspiracy to distribute and to possess with intent

---

[1] The original Indictment, which was filed on April 4, 2017, did not name the Defendant. [Doc. 1].

to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count One), and one count of possession with intent to distribute at least 50 grams of actual methamphetamine, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Five). [Id.]. The Government filed an Information indicating that it intended to rely on a prior felony drug conviction to seek an enhanced sentence pursuant to 21 U.S.C. § 851. [Doc. 91].

The Government made a plea offer to the Defendant, which called for his guilty plea to Count One in exchange for the dismissal of Count Five and the § 851 enhancement, but the Defendant rejected that offer. [See Doc. 228: § 2255 Order at 2]. The plea would have reduced the Defendant's sentencing exposure from a twenty-year statutory minimum to a ten-year statutory minimum.[2] [Id.]. Additionally, the proposed plea offer included a proposed joint recommendation that the amount of actual methamphetamine known to or reasonably foreseeable by the Defendant was 248.9 grams, as well as the "standard reduction levels" for pleading guilty. [Id. at 2-3]. The Defendant, however, rejected the Government's plea offer and opted instead to proceed to trial. [Id. at 3].

---

[2] The Defendant's statutory maximum would have remained at life imprisonment.

The Defendant's jury trial was held in January of 2018. At trial, the Government presented evidence that in the summer of 2016, Drug Enforcement Agency ("DEA") agents began investigating the distribution of crystal methamphetamine by the Defendant's co-defendant, Marissa Burt. [See id.]. Agents conducted controlled purchases of methamphetamine from Burt and her roommate, co-defendant Jillian Swimmer, and obtained a warrant to place a GPS tracking device on the vehicle of Burt's suspected driver, co-defendant Jordan Oocumma. [Id.]. The investigation led Special Agent Billy Joe Stites to suspect that Burt and others were engaged in methamphetamine trafficking with a source of supply (later identified as the Defendant) in Atlanta, Georgia. [Id.]. North Carolina Highway Patrol intercepted Oocumma's vehicle upon its return from Atlanta to North Carolina on September 13, 2016. [Id. at 3-4]. During the traffic stop, co-defendant John Wise intentionally crashed his vehicle nearby in an unsuccessful attempt to divert the trooper's attention and permit Burt to escape. [Id. at 4]. A search of Oocumma's vehicle revealed 248.9 grams of actual methamphetamine, marijuana, a purse with a firearm and ammunition inside, handwritten drug ledgers, scales, syringes, and Burt's cell phone. [Id.].

Burt, Oocumma, Swimmer, and Wise, who all had previously entered guilty pleas, testified at the Defendant's trial. [Id.]. Burt, Swimmer, and Oocumma testified that Burt and others traveled to Atlanta every few days during the summer of 2016 to purchase distribution quantities of methamphetamine from the Defendant, whom they all identified at trial as "Champ." [Id.].

At trial, the Government introduced Burt's cell phone records showing that Burt had repeatedly called a number belonging to an individual she identified as "Champ," which demonstrated that Burt and "Champ" had coordinated Burt's trips to Atlanta and meetings once she arrived there. [Id.]. After her arrest, Burt placed recorded phone calls to "Champ" that were played for the jury. [Id.]. Burt identified the Defendant's voice in the recordings. [Id. at 5]. During the second recorded call, the Defendant became suspicious of Burt and told her to "tell narcotics and the … feds [that] Champ says suck his mother fucking dick and when they come for me … they better be ready to shoot it out." [Id.]. The jury found the Defendant guilty of both counts. [Doc. 161: Jury Verdict].

In preparation for sentencing, the Court's probation office prepared a Presentence Investigation Report (PSR). [Doc. 178]. The PSR scored the

Defendant's base offense level as 36 because the Defendant was responsible for more than 2.04 kilograms of actual methamphetamine. [Doc. 178 at ¶¶ 11, 17]. No specific offense characteristics or Chapter Four enhancements were added. [Id. at ¶¶ 18-23]. The Defendant's criminal history score was based on a number of prior convictions, including three points for a 2002 Georgia conviction for felony statutory rape and three points for a 2010 Georgia conviction for possession of marijuana greater than one ounce. [Id. at ¶¶ 28, 33, 34, 36]. Two points were added because the Defendant committed the instant offense while he was on parole. [Id. at ¶ 39]. This resulted in 14 criminal history points and a criminal history category of VI. [Id. at ¶ 40]. The resulting advisory guideline range was 324 to 405 months' imprisonment. [Id. at ¶ 68].

The Defendant's sentencing hearing was held on April 26, 2018. At the hearing, defense counsel argued that the Defendant's base offense level should be 32 rather than 36 because the evidence at trial demonstrated that the relevant amount was 252 grams rather than 2.04 kilograms of methamphetamine. [Doc. 188 at 10]. The Court entertained this objection even though it was untimely, and sustained it in part because the preponderance of the evidence supported a finding of only 1.1 kilograms of

5

actual methamphetamine. [Id. at 20]. This reduced the offense level from 36 to 34, and reduced the guideline imprisonment range to between 262 and 327 months. [Id.]. The Government requested a guideline sentence. [Id. at 24]. The Defendant asked for a downward variance from the guidelines range because the PSR did not "accurately depict[] who [he is] or [his] character," and in light of the nature of his prior convictions and his accomplishments since his 2012 release from prison. [Id. at 21, 25].

The Court considered the 18 U.S.C. § 3553(a) factors and sentenced the Defendant at the bottom of the advisory guideline range to 262 months' imprisonment for each count, to be served concurrently, followed by 10 years of supervised release. [Id. at 26-27]. The Judgment was entered on April 30, 2018. [Doc. 180].

The Defendant appealed, and the Fourth Circuit affirmed his conviction and sentence. United States v. Champion, 777 F. App'x 66 (4th Cir. 2019). The Defendant filed a motion to vacate pursuant to 28 U.S.C. § 2255 in January 2021. The Court denied the Defendant's motion in March 2022. [Doc. 228]. The Defendant appealed the denial of his § 2255 motion, and that appeal is still pending. [Doc. 229]. The Defendant is currently housed

6

at FCI Victorville Medium II and has a projected release date of February 7, 2037.³

The Defendant now moves the Court for compassionate release, arguing that the disparity that exists between his sentence and the sentences imposed upon his co-defendants, whom he contends were more culpable, constitutes an extraordinary and compelling reason warranting a reduction of his sentence to "the statutory minimum of 120 months."⁴ [Doc. 230 at 5]. The Defendant further requests the appointment of counsel to assist him in obtaining records to support his compassionate release request. [Doc. 232].

Finally, the Defendant moves for leave to raise an additional ground in support of his motion for compassionate release. [Doc. 233]. The Court will allow the Defendant's motion and consider all of the grounds raised.

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling

---

³ See https://www.bop.gov/inmateloc/ (last accessed Aug. 29, 2023).

⁴ Pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 851, the Defendant's minimum term of imprisonment was, in fact, 240 months.

7

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Here, it appears that the Defendant has sufficiently exhausted his administrative remedies with the BOP by requesting compassionate release from the Warden.  Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable.  Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions and provides specific and limited grounds for release under § 3582(c)(1)(A).  See U.S.S.G. § 1B1.13.  The policy statement set

8

forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not yet updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release.[5] In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, while this policy statement "remains helpful guidance even when motions are filed by defendants," id. at 282 n.7, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, the Defendant asserts that "[t]he disparity that exist[s] between [the Defendant] and his more culpable codefendants presents an extraordinary and compelling circumstances warranting such reduction."

---

[5] An amendment to U.S.S.G. § 1B1.13 is set to go into effect on November 1, 2023.

[Doc. 230 at 5]. Any disparity between the Defendant's sentence and the sentences imposed his co-conspirators, however, is justified by the circumstances presented in the Defendant's individual case. Contrary to the Defendant's contention, the evidence presented at trial demonstrated that the Defendant played a significant role in the underlying methamphetamine conspiracy, and he was ultimately held responsible for over one kilogram of actual methamphetamine. Moreover, the Defendant had a significant criminal history, which resulted in the filing of a § 851 notice against him and the determination that he falls in criminal history category VI. Finally, the Defendant rejected the Government's plea offer and instead proceeded to trial, thereby losing his opportunity to claim acceptance of responsibility.[6] Finally, the sentence imposed was within the advisory Guidelines range. For all of these reasons, the Court concludes that any disparity between the length of the Defendant's sentence and the sentences imposed on his co-defendants is not unwarranted and does not constitute an extraordinary and compelling reason for a sentence reduction.

---

[6] To the extent that the Defendant argues that his decision to proceed to trial instead of accepting a plea deal was the result of ineffective assistance of counsel [see Doc. 230 at 8], this argument challenges the validity of his conviction and sentence and is not cognizable in a compassionate release proceeding. See United States v. Ferguson, 55 F.4th 262, 272 (4th Cir. 2022). In any event, the Defendant has already raised this argument in his § 2255 Motion to Vacate, and it was rejected.

Although it is not expressly stated as a grounds for relief, the Defendant asserts in his motion that his mother has "significant health complications" and that, as her only child, the Defendant "will become her sole provider and caretaker *in the event* her health continues to deteriorate." [Doc. 230 at 6] (emphasis added). To the extent that the Defendant seeks to assert this as a basis for seeking compassionate release, such request is denied. The mere possibility that the Defendant's mother *may* require caretaking at some point in the future is too conclusory and speculative to serve as a grounds for compassionate release.

Finally, the Defendant asserts as a new grounds for relief that the Court should reduce his sentence "based upon the fact that (1) methamphetamine purity is not an accurate proxy for a defendant's role in a drug trafficking conspiracy; (2) there is no empirically based evidence supporting the Sentencing Commission's harsher treatment of higher purity methamphetamine; and (3) the methamphetamine Guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major, more dangerous drugs." [Doc. 233-2 at 2]. These arguments, however, do not present extraordinary and compelling reasons for a reduction in the Defendant's sentence here. Such arguments

11

are not unique to the Defendant and could have been raised at the time of sentencing.  See United States v. Escajeda, 58 F.4th 184, 186 (5th Cir. 2023) (holding that compassionate release relief is available only when prisoner "face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner").  Moreover, the Court rejects the Defendant's contention that the methamphetamine Guidelines create unwarranted sentencing disparities vis-à-vis other categories of "more dangerous" controlled substances.  Indeed, the Court notes that methamphetamine is among the most dangerous drugs encountered in this District, and is greatly destructive to individuals and to the communities of Western North Carolina.

For these reasons, the Court concludes that the grounds cited by the Defendant, considered either singly or in combination, do not constitute extraordinary and compelling reasons for a sentence reduction.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted.  See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

12

Here, the Defendant's offense was very serious. The Defendant was responsible for supplying a significant amount of controlled substances—over a kilogram of actual methamphetamine—to multiple dealers within Western North Carolina over an extended period of time. The amount of methamphetamine that was tested by law enforcement was determined to be 99% pure. Further, the Defendant has a significant criminal history, including multiple convictions for drug possession, as well as a conviction for felony statutory rape, and he committed his present offense of conviction while on parole. For these reasons, the Court finds that the 262-month sentence imposed for the Defendant's offense adequately reflects the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration.

The Defendant also moves for the appointment of counsel to represent him in connection with litigating his motion for compassionate release. The

13

Defendant has no constitutional right to the appointment of counsel to file post-conviction motions. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)). The Court may, in some circumstances, appoint counsel to represent a prisoner when the interests of justice so require and the prisoner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, the Defendant has already filed a motion for compassionate release outlining the grounds for his motion. While the Defendant argues that counsel is necessary in order to obtain medical records to support his motion, the grounds asserted by the Defendant in his motion do not require examination of any medical records. Accordingly, the Court concludes that the interests of justice do not require the appointment of counsel in this case. See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001).

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Leave of Court to File Supplemental Ground for Relief" [Doc. 233] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendant's "Motion for Reduction in Term of Incarceration 18 U.S.C. § 3582(c)(1)(A)" [Doc. 230] and the Defendant's "Motion for Appointment of Counsel" [Doc. 232] are **DENIED**.

**IT IS SO ORDERED.**

Signed: August 29, 2023

Martin Reidinger
Chief United States District Judge

15

Case 1:17-cr-00046-MR-WCM   Document 237   Filed 08/29/23   Page 15 of 15