UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

CRIMINAL CASE NO. 1:17-cr-00046-5

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | REPLY TO GOVERNMENT'S |
| V. | ) ) ) | RESPONSE IN OPPOSITION TO MOTION |
| | ) ) | FOR COMPASSIONATE RELEASE |
| RICHARD ARLEE CHAMPION | ) ) | PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) |

Defendant Richard Arlee Champion respectfully submits this Reply to the Government's

Response in Opposition (Doc. 257). Mr. Champion thanks the Court for its prior consideration of

his motion and files this reply to address the Government's arguments while highlighting

significant changed circumstances since the Court's 2023 denial. These developments most

notably the full release of all co-defendants and Mr. Champion's continued, substantial

rehabilitation warrant fresh consideration under the applicable legal framework.

**This Reply proceeds in four parts.**

**Part I** demonstrates that the combination of a now dramatically aggravated unwarranted

sentencing disparity, over-representation of criminal history, and remarkable post-sentencing

rehabilitation satisfies the "other reasons" catch-all in U.S.S.G. § 1B1.13(b)(5).

**Part II** shows Mr. Champion is not a danger to the community.

**Part III** explains why a fresh assessment of the § 3553(a) factors strongly favors reduction.

1

**Part IV** sets forth the requested relief, including an evidentiary hearing.

The Government's opposition relies heavily on Mr. Champion's pre-2017 criminal history, much of it tied to untreated addiction, to argue ongoing danger to the community and that the § 3553(a) factors continue to support the original 262-month sentence. While criminal history remains relevant, Fourth Circuit precedent requires a district court to meaningfully weigh post-sentencing rehabilitation and changed circumstances rather than memorializing past transgressions. **United States v. Martin**, 916 F.3d 389, 397–98 (4th Cir. 2019); **United States v. McDonald**, 986 F.3d 402, 410–11 (4th Cir. 2021); see also **United States v. Brown**, 78 F.4th 122 (4th Cir. 2023) (requiring holistic review). The Government's approach falls short of this standard.

Mr. Champion has never claimed rehabilitation alone suffices. Instead, the combination of **(1)** a now dramatically aggravated unwarranted sentencing disparity, **(2)** over-representation of his criminal history, and **(3)** remarkable post-sentencing rehabilitation satisfies the "other reasons" catch-all in U.S.S.G. § 1B1.13(b)(5). These circumstances, taken together, are similar in gravity to the enumerated categories. The policy statement expressly contemplates such combinations.

## I. Extraordinary and Compelling Reasons: The Combination Under § 1B1.13(b)(5) Qualifies, Particularly in Light of Changed Circumstances

The Government concedes Mr. Champion's substantial rehabilitation (Doc. 257 at 18) but treats each factor in isolation. This compartmentalization ignores the holistic approach the Guidelines

and Fourth Circuit endorse. Post-2023 developments have strengthened Mr. Champion's showing considerably.

## A. Unwarranted Sentencing Disparity (Now Dramatically Aggravated and Distinct from Prior Arguments)

The sentencing disparity argument presented here is materially different from any prior presentation to the Court. It is no longer limited to the disparity that existed at the time of the original sentencing or the 2023 denial. Instead, it rests on new, post-2023 changed circumstances that have dramatically aggravated the inequity, combined with additional layers of unwarranted disparity that were not previously emphasized in this manner.

All co-defendants have now completed their sentences and been released as of 2024, leaving Mr. Champion as the only participant in the conspiracy still incarcerated. This complete release of every other participant creates a far starker disparity than previously existed and brings this case squarely within recent Fourth Circuit authority. In **United States v. Johnson**, 143 F.4th 212 (4th Cir. 2025), the Fourth Circuit held that a district court does not abuse its discretion by treating a dramatic sentencing disparity between a defendant and co-conspirators as an "extraordinary and compelling reason" under § 1B1.13(b)(5), even standing alone. The court emphasized the district court's broad discretion to identify "other reasons" similar in gravity to enumerated categories. Id. at 216.

Here, the disparity exceeds 355% in some comparisons. It is even more compelling because Mr. Champion played a limited, peripheral role (supplier for approximately five weeks) compared to co-defendant Burt, whom evidence showed was the leader/organizer with prior dealing with

3

firearm involvement, and other aggravating conduct. Mr. Champion's sentence also reflects a clear trial penalty for exercising his constitutional right to trial, while others benefited from cooperation. With all others now home, the inequity is extraordinary. This changed circumstance since the 2023 denial distinguishes the current motion and satisfies (b)(5), alone or in combination.

Further reinforcing this point, Mr. Champion's sentence stands in significant disparity with within-circuit and national averages for similar conduct, as reflected in USSC data previously provided to the Court. These layered disparities aggravated co-defendant disparity, trial penalty, limited role, and deviation from contemporary averages collectively present a compelling case for relief under the "other reasons" provision.


## B. Over-Representation of Criminal History

Mr. Champion acknowledges his pre-2017 criminal conduct but respectfully submits that it was overrepresented due to addiction-driven behavior. His Statutory Rape offense (Romeo & Juliet Scenario) is no longer a felony conviction under state law. see O.C.G.A. 16-6-3(c). Under federal law, Congress has actually excluded this particular crime from the definition of a sex offense. see 34 U.S.C. 20911(5)(c). This is not a criminal offense under federal law.

Relevant guideline commentary regarding marijuana (e.g., personal possession of marijuana adjustment) and the evolving legal landscape on such predicates further support treating Mr. Champions criminal history as over-represented. Once other compelling reasons are established, the court may consider new arguments or developments in determining the extent of any reduction. U.S.S.G. 1B1.13(c); **Concepcion v. United States**, 597 U.S. 580 (2022). Rehabilitation now mitigates the risk once posed by that history.

4

**C. Substantial Post-Sentencing Rehabilitation**

The Government's own Exhibit 1 (BOP records filed in opposition) powerfully supports Mr. Champion's progress. He maintains a perfect disciplinary record with zero infractions since 2018. The Bureau of Prisons classifies him as Low recidivism risk. He has completed over 1,000 hours of targeted programming, including:

• Drug Education and NRES Drug Treatment (fully completed).

• Multiple cognitive-behavioral therapy, anger management, parenting, and vocational programs.

• ACE Credit Repair, fitness phases, real estate and commercial driver's license preparation, and extensive self-improvement courses.

• Mentoring and development of a detailed post-release business plan.

These efforts directly address the root causes of his past conduct, primarily untreated addiction. In addition, Mr. Champion successfully completed sexual offense-specific treatment, directly refuting the Government's assertion (Doc. 257 at 3) that he "failed to begin sexual counseling as required" during his state probation. (See Exhibit 1, Email for Declassification request) also (See Exhibit 2, Letter from Mzola Ahuama-Jonas, CJSOC, LPC, NCC, CEO/Clinical Director, Georgia Counseling & Psychological Services, Inc., dated March 3, 2014). (Ex#2) This letter confirms that Mr. Champion initiated treatment on October 12, 2012, remained consistently active for over 17 months on a weekly basis, demonstrated remorse, made positive strides toward rehabilitation, and mastered key concepts including self-regulation, urge control, covert sensitization, creative problem-solving, and life management skills. See **Pepper v. United**

**States**, 562 U.S. 476 (2011) (post-sentencing rehabilitation is highly relevant); Brown, 78 F.4th at 131 (rehabilitation plus other factors supports relief). This record is stronger and more sustained than at the time of the 2023 denial.

**D. The Combination Satisfies § 1B1.13(b)(5)**

Section 1B1.13(b)(5) expressly allows "any other circumstance or combination of circumstances" similar in gravity to enumerated reasons. The whole here exceeds the sum of its parts: a now-extreme co-defendant disparity (aggravated by full releases and trial penalty), over-represented history viewed in light of current mitigation and changes in law, and documented transformation. These mirror the gravity of serious medical conditions or family circumstances by presenting a compelling case for individualized justice. **Johnson**, 143 F.4th at 216.

## II. Mr. Champion Is Not a Danger to the Community Under § 1B1.13(a)(2)

The Government's danger analysis rests almost exclusively on historical conduct while giving minimal weight to current evidence the precise approach the Fourth Circuit has condemned. **Martin**, 916 F.3d at 397–98; **McDonald**, 986 F.3d at 411.

BOP's Low recidivism risk assessment, zero infractions since 2018, years of sustained sobriety in a structured environment, and completion of programming including successful completion of the sexual offense-specific treatment the Government incorrectly asserts were not begun demonstrating meaningful change.

6

Importantly, under the First Step Act of 2018, Congress directed the Attorney General to develop a risk and needs assessment system (18 U.S.C. § 3632) to classify prisoners' recidivism risk and guide programming incentives. The Bureau of Prisons, applying the Department of Justice's own criteria, has now classified Mr. Champion as Low recidivism risk. This is the very system the United States government created and relies upon. The Government cannot credibly maintain that Mr. Champion poses a danger to the community when its own statutory risk-assessment tool and BOP records classify him as Low risk. Recidivism risk also decreases significantly with age, and Mr. Champion is now 43 years old. A strong release plan which includes housing with (Fiancé Felicia Parker), family support, verified employment, over 70 verifiable letters of support from members of the community, including a letter written by Mark West, a lifetime law enforcement officer, which further ensures public safety. Supervised release with potential home confinement provides adequate protection. Criminal history alone cannot override this holistic, current evidence. **Brown**, 78 F.4th 122.

### III. A Fresh Assessment of the § 3553(a) Factors Strongly Favors Reduction

The statute requires consideration of § 3553(a) factors "to the extent that they are applicable" in light of new extraordinary and compelling circumstances. **United States v. Centeno-Morales**, 90 F.4th 274, 282 (4th Cir. 2024). A fresh weighing, accounting for changed circumstances, supports relief.

7

Nature and circumstances of the offense / history and characteristics (§ 3553(a)(1)): The offense was serious but non-violent with a limited role. Mr. Champion's post-sentencing conduct and Low-risk classification now reflect a fundamentally different individual.

Need to protect the public (§ 3553(a)(2)(C)): BOP's Low-risk assessment and exemplary record show minimal ongoing danger.

Mr. Champion has been incarcerated since June 13, 2017, more than eight and a half years as of this filing. A substantial portion of that time has been served under particularly harsh conditions at two of the most troubled facilities in the Bureau of Prisons system: FCI Atlanta and FCI Lompoc.

At FCI Atlanta, Mr. Champion endured chronic mismanagement, widespread corruption, staffing shortages, security failures, and deplorable living conditions that drew national scrutiny and congressional investigation. These systemic problems culminated in the near-total evacuation of the facility in 2021 amid multiple scandals. During the height of the COVID-19 pandemic, the institution's well-documented failures exacerbated health and safety risks for inmates. As a direct result of these conditions, Mr. Champion was transferred approximately 2,600 miles across the country to FCI Lompoc, California, which became one of the worst COVID-19 hotspots in the entire federal prison system.

Lompoc was widely described as "ground zero" for the virus in BOP facilities, with infection rates exceeding 90% in some units due to inadequate medical staffing, poor screening protocols, insufficient protective measures, and leadership deficiencies.

8

These extended periods of heightened hardship far beyond the ordinary burdens of incarceration have contributed meaningfully to the punitive aspect of Mr. Champion's sentence. Combined with his exemplary rehabilitation, sustained sobriety, completion of extensive programming, and Low recidivism risk classification, the sentence has now achieved its legitimate purposes of just punishment, specific deterrence, and rehabilitation. Further incarceration is therefore greater than necessary under 18 U.S.C. § 3553(a)(2)(A)–(B). See **Concepcion v. United States**, 597 U.S. 580, 589 (2022) (district courts may consider post-sentencing developments when weighing § 3553(a) factors).

The Government's brief largely re-weighs the original record. Precedent forecloses that limited approach when new circumstances exist.

Mr. Champion's detailed release plan family support, employment readiness, continued treatment, and community ties reinforces that a reduced sentence (time served or an alternative such as 180 months) with supervised release, including home confinement if appropriate, satisfies all § 3553(a) goals. See **United States v. Peace**, 2025 U.S. Dist. LEXIS 91831, at* 13-15 (D.S.C. May 14, 2025) (holding that the court can impose a sentence of home confinement as a condition to substitute for the defendant's remaining prison term)

## IV. Conclusion and Request for Relief

For the reasons set forth above and in his original motion (and supporting exhibits), Mr. Champion respectfully requests that the Court grant compassionate release and reduce his sentence to time served (or a term permitting immediate release), followed by a period of

9

supervised release that may include home confinement. In the alternative, he requests reduction to approximately 180 months.

An evidentiary hearing is needed so the Court may fully assess Mr. Champion's rehabilitation evidence, BOP risk assessment details, release plan, and the impact of co-defendant releases. Live testimony and exhibits would provide the complete record required for this individualized determination. **Martin**, 916 F.3d at 397–98. Mr. Champion also requests appointment of counsel if the Court deems it helpful.

Respectfully submitted this 8th day of May 2026.

*[signature]*

Richard Arlee Champion

REG# 33773-058

FCC Coleman Low

PO Box 1031

Coleman FL 33521

## Certificate of Service

I certify that on this date May 8, 2026, I mailed a copy of the foregoing to The Clerk of Court Asheville Western District of North Carolina and The United States Attorney's Office Western District of North Carolina to the Government's response.

The Clerk of Court (Asheville)

Western District of North Carolina

100 Otis Street, Room 233

Asheville, NC 28801

&

U.S Attorney Russ Ferguson

U.S. Attorney's Office

Western District of North Carolina

227 West Trade Street, Suite 1650

Charlotte, NC 28202

*Richard Arlee Champion*

Richard Arlee Champion